**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Fernando CORNIEL–REYES,
Defendant—Appellant.**

No. 04–10015.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2006.

Decided April 7, 2006.

** This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Thomas S. Dougherty, Esq., USLV—
Office of the U.S. Attorney, Las Vegas,
NV, for Plaintiff–Appellee.

Diane L. Dragan, Esq., Las Vegas, NV,
for Defendant–Appellant.

Before GOODWIN, REINHARDT, and
HAWKINS, Circuit Judges.

## MEMORANDUM *

Fernando Corniel–Reyes ("Corniel–
Reyes") appeals his conviction for At-
tempted Possession of a Controlled Sub-
stance with Intent to Distribute and
Conspiracy to Distribute a Controlled
Substance. We affirm, finding that any
trial errors were harmless.

Because defense counsel did not object at trial to the prosecutor's questioning, we review for plain error. *United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir.1999). "Plain error is highly prejudicial error affecting substantial rights." *United States v. Rudberg*, 122 F.3d 1199, 1206 (9th Cir.1997). Reversal is proper "only if ... the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would result in a miscarriage of justice." *United States v. Combs*, 379 F.3d 564, 568 (9th Cir.2004). In applying the plain error standard, we "consider all circumstances at trial including the strength of the evidence against the defendant." *Rudberg*, 122 F.3d at 1206 (quoting *United States v. Chambers*, 918 F.2d 1455, 1459 (9th Cir.1990)).

The prosecutor's questioning of Corniel–Reyes constituted error. In both *United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir.2002), and *Combs*, 379 F.3d at 572, we held that asking a witness to give his opinion about the credibility of government witnesses constituted prosecutorial error. Here, on three different occasions, the government asked questions that compelled Corniel–Reyes to give his opinion about the credibility of government witnesses.

We concluded in *Geston*, 299 F.3d at 1136–37, and *Combs*, 379 F.3d at 572, that the error was plain. The facts of those cases, however, are quite different from this one. A second trial necessitated by an initial hung jury mistrial led to *Geston's* conclusion "that the improper questioning [in Geston's second trial] impacted [his] due process rights." *Id.* In *Combs*, the prosecutorial error was compounded by both improper judicial involvement and the prosecutor's closing argument, which made use of the improper questioning. Further,

both cases were close and heavily dependent on witness credibility.

Here, the government presented substantial, independent evidence of guilt. After the drug deal had been arranged, Corniel–Reyes was stopped in Kansas driving a car with $46,000 in a hidden compartment. A week later, Corniel–Reyes arrived in Las Vegas from New York, driving a Mercedes that was to serve as collateral for the drug transaction. Corniel–Reyes bragged to the undercover detective about his previous drug trafficking activities and mentioned that he would be driving the cocaine back to New York. At trial, both Jose Campusano and the undercover agent testified about Corniel–Reyes's role as a drug trafficker. Although Corniel–Reyes raised a duress defense, he presented no independent evidence of the alleged threats. More importantly, these threats came *after* the Kansas stop and *after* Corniel–Reyes had driven the Mercedes to Las Vegas. Accordingly, any error from the prosecutor's questioning of Corniel–Reyes was harmless.

Nor did the prosecutor commit reversible error in vouching for Campusano. Although the prosecutor's mentioning of the plea agreement constituted improper vouching, the error was not plain. When reviewing for plain error due to improper vouching, we "balance[ ] the seriousness of the vouching against the effectiveness of any curative instruction and the closeness of the case." *United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir.1999).

Regarding the curative instruction, we held in *United States v. Shaw*, that instructing the jury to weigh the testimony of the cooperating witness "with greater caution than that of an ordinary witness" rendered the prosecutor's error harmless. 829 F.2d 714, 718 (9th Cir.1987). Likewise, at Corniel–Reyes's trial, the district

court instructed the jury that "[y]ou should consider [Campusano's] testimony with great caution."

As to the closeness of the case, "[w]hen the case is particularly strong, the likelihood that prosecutorial misconduct will affect the defendant's substantial rights is lessened because the jury's deliberations are less apt to be influenced." *United States v. Weatherspoon,* 410 F.3d 1142, 1151 (9th Cir.2005). The case against Corniel–Reyes was substantial, including direct evidence of his participation in the drug deal and testimony from an undercover agent and a co-conspirator. Because Corniel–Reyes's trial included both a curative instruction and strong evidence of guilt, any prosecutorial error in vouching was harmless.

■ Similarly, the cumulative effect of the errors does not merit reversal. Even if the prosecutorial errors individually do not "rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial to [warrant] reversal." *United States v. Wallace,* 848 F.2d 1464, 1475 (9th Cir.1988). Where "the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir. 1996). Given the strong case presented by the government, the cumulative errors from the improper questioning and vouching did not sufficiently prejudice Corniel–Reyes to warrant reversal.

■ Finally, the district court properly admitted evidence of Corniel–Reyes's other drug trafficking activities. Federal Rule of Criminal Procedure 404(b) is inapplicable "where the evidence the govern-

ment seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard,* 354 F.3d 850, 854 (9th Cir.2003). Corniel–Reyes does not appeal the district court's ruling that the evidence was inextricably intertwined with the offense, and that finding alone is sufficient to admit the evidence.

**AFFIRMED.**

REINHARDT, Circuit Judge, dissenting.

I agree with the majority that the prosecutor's questioning of Corniel–Reyes and his vouching for Campusano both constituted error.[1] I disagree, however, with the majority's conclusion that these errors do not warrant reversal.

Notwithstanding the majority's assertion that "the government presented substantial, independent evidence of guilt," Maj. op. at ——, the record here clearly establishes that "[t]his case was a close one" in which "witness credibility was paramount." *United States v. Geston,* 299 F.3d 1130, 1136–37 (9th Cir.2002). Indeed, all of the evidence cited by the majority demonstrates the extent to which "the case boiled down to whether the jury believed" Corniel–Reyes or Campusano. *United States v. Combs,* 379 F.3d 564, 573 (9th Cir.2004). First, as regards the Kansas traffic stop, Corniel–Reyes testified that he did not know that money was hidden in the car.[2] Second, as to driving the Mercedes to Las Vegas, Corniel–Reyes testified that he did not know that the car was to serve as collateral for a drug transaction. Third, the significance of Campusano's testimony about Corniel–Reyes' alleged drug traf-

---

1. I also agree with the majority's conclusion that the district court properly admitted evidence of Corniel–Reyes' alleged other drug trafficking activities.

2. The Kansas highway patrol trooper also testified that Corniel–Reyes denied any knowledge of the $46,000 that was discovered in the car.

ficking depended entirely on whether the jury believed Campusano to be credible. Finally, as to Corniel–Reyes' "bragging" to the undercover detective about his drug trafficking activities, he testified that these were made-up stories that he was forced to tell by Campusano, who threatened the life of his daughter. In sum, the outcome of this case depended entirely upon whether the jury believed Corniel–Reyes' testimony that he had no knowledge of the drug transaction before arriving in Las Vegas and that he was acting under duress on the night of his arrest, or whether it believed Campusano's testimony to the contrary. Because Corniel–Reyes' "fate hinged on resolution of the conflicting testimony presented by the parties," the prosecutor's forcing him to opine as to the veracity of government witnesses clearly constituted plain error under our precedent. *Geston,* 299 F.3d at 1137; *Combs,* 379 F.3d at 572.

For similar reasons, I cannot agree with the majority's conclusion that the prosecutor did not commit reversible error in vouching for Campusano. The government's case depended almost entirely on the credibility of the witness for whom the government vouched. *See United States v. Rudberg,* 122 F.3d 1199, 1206 (9th Cir. 1997) (finding plain error where government's case "was limited to the testimony of the vouched witnesses"); *see also United States v. Weatherspoon,* 410 F.3d 1142, 1151 (9th Cir.2005) (observing that possibility of prejudicial effect stemming from vouching is "increased in cases where credibility is of particular importance"). Furthermore, the general curative instruction given at the end of the trial was not sufficient to vitiate the effect of the vouching. *See Rudberg,* 122 F.3d at 1205.

Finally, even if neither instance of prosecutorial misconduct when examined in isolation rose to the level of plain error, their cumulative effect requires reversal. *See United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir.1996) (holding that cumulative effect of errors was prejudicial where "evidence against the defendant was not overwhelming and the case was a close one"). Both relate directly to the question of credibility; both could have affected the jury's judgment as to whether to believe a long-time major drug dealer facing a lengthy drug sentence or a defendant without a past criminal record employed on a regular basis as a waiter; in short, the two violations together could easily have affected the outcome of the trial.

For the reasons set forth above, I believe that the conviction must be reversed. Accordingly, I respectfully dissent.